IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01603-MEH

NICHOLAS MOSES, and
JOHN MOSES,

    Plaintiffs,

v.

POLICE CORPORAL JOSEPH LAMB, in his individual capacity, and
POLICE OFFICER BEN HIMES, in his individual capacity,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiffs Nicholas Moses and John Moses ("Plaintiffs") assert claims in their operative Complaint ("Complaint") against Defendants Joseph Lamb ("Defendant Lamb") and Ben Himes ("Defendant Himes"). ECF 1. Plaintiffs bring a claim against Defendants pursuant to 42 U.S.C. § 1983 for alleged excessive force in violation of the Fourth Amendment. Compl. at ¶¶ 78–94. Defendant Himes filed the present motion to dismiss ("Motion") seeking dismissal of the claim and asserting qualified immunity. ECF 19. The Motion is fully briefed, and the Court heard oral argument on November 2, 2020. As set forth below, this Court **grants** Defendant Himes' Motion.

## BACKGROUND

    The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiffs in their Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On June 7, 2018, Plaintiffs allege that they were in a truck parked in a public parking lot located near Mudrock's Tap and Tavern at 585 E. South Boulder Road, Louisville, Colorado 80027. Compl. at ¶ 14. A Mudrock's employee called the Louisville Police Department to report that Plaintiffs were using narcotic drugs. *Id.* at ¶ 15. Defendant Lamb responded to this call; Defendant Himes arrived shortly after Defendant Lamb. *Id.* at ¶ 17. When Defendant Lamb arrived, he pulled his vehicle in front of Plaintiffs' truck. *Id.* at ¶ 18. Defendant Lamb unholstered his gun, pointed it at Nicholas Moses ("Nicholas"), and ordered him to get out of the truck. *Id.* at ¶ 19. After arriving, Defendant Himes parked his patrol car perpendicular to Plaintiffs' truck, exited his vehicle, pulled out his gun, and pointed it at Plaintiffs. *Id.* at ¶ 24.

Responding to Defendant Lamb's commands, Nicholas exited his vehicle and walked backwards toward Defendant Lamb with his hands raised. *Id.* at ¶ 25. Defendant Lamb told Nicholas he would be taken into custody, at which point Nicholas ran back into his truck and attempted to drive away. *Id*. Continuing to point their guns, Defendants followed Nicholas and tried to pull him from the truck. *Id.* at ¶ 26. At this point, Defendants could see John Moses ("John") in the vehicle with Plaintiffs' puppy, Dozer. *Id.* Defendant Lamb then held his gun to Nicholas' neck. *Id.* at ¶ 27. In reaction, Defendant Himes "pushed" Defendant Lamb away from the truck and pulled out his taser. *Id.* at ¶ 28. Defendant Himes deployed the taser but did not directly strike Nicholas. *Id.* at ¶ 29. Defendant Himes then moved approximately fifteen feet away from the truck. *Id.* at ¶ 30.

Nicholas attempted to flee by turning the wheels away from the officers and putting the truck in drive. *Id.* at ¶ 33. In doing so, Nicholas caused his truck to hit Defendant Lamb's vehicle, remaining pinned against it for thirty seconds. *Id*. at ¶ 37. Unsuccessful in his escape driving forward, Nicholas put his truck in reverse and drove straight backward into a tree. *Id.* at ¶ 39.

Then, again turning the wheels of the truck away from Defendants, Nicholas put the truck in drive and drove forward. *Id.* at ¶ 39. From Nicholas turning the wheels of the truck to driving forward, eight seconds elapsed. *Id.* at ¶ 40. As Nicholas drove forward, the truck began to pass Defendants. *Id.* at ¶ 41. Defendant Lamb fired his gun at the truck, striking Nicholas in the arm and killing the puppy, Dozer. *Id.* at ¶ 53.

After being shot, Nicholas stopped the truck about fifteen feet away from when he had put it in drive. *Id.* at ¶ 56. Defendant Lamb ordered Nicholas to exit the truck, but he "was in shock and crying with pain from the bullet wound." *Id.* at ¶ 57. Defendant Lamb tried to open the driver's door, but three bullets hit the door handle, making it inoperable from the outside. *Id.* Meanwhile, Defendant Himes instructed John to exit the truck and walk backward toward him with his hands up. *Id.* at ¶ 58. John replied that he could not get out of the truck, since he was holding Nicholas' arm to stop the bleeding. *Id.* At some point, John did exit the truck. *Id.* at ¶ 59. John cooperated with Defendants' commands, including getting down on his knees. *Id.* at ¶ 62. Before Defendant Himes attempted to place John in handcuffs, Plaintiffs told him both that John had "severe arthritis in his shoulders[,]" and to "please be careful when placing handcuffs" on him. *Id.* at ¶ 62. When placing the handcuffs, Defendant Himes "wrenched" John's arms behind his back. *Id.* This action caused him "immense" pain. *Id.* at ¶ 6. John "screamed out in pain[,]" but John "continued wrenching" John's arms. *Id.* at ¶ 62.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

3

678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

As mentioned above, Plaintiffs' Complaint asserts one claim against Defendant Himes for violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. Defendant Himes views this claim as encompassing both the alleged acts of pointing a gun at Plaintiffs and handcuffing John. He argues for dismissal of the claim under both acts, asserting qualified immunity. Mot. at 7. In support, Defendant Himes attached body worn camera ("BWC") footage. ECF 21 (conventionally submitted material). Plaintiffs contend that the Court may not consider such evidence at the motion to dismiss stage. Resp. at 5. The Court will first address the BWC footage before proceeding to the merits of the Motion.

### I.     BWC Footage

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010). There are limited exceptions to this general rule by which a court may consider materials beyond the four corners of the complaint. *Id.* These three exceptions are: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id.* (internal citations and quotations omitted). Defendant Himes contends that the Complaint references the BWC footage and relies, in part, on those recordings. Mot. at 4. Hence, Defendant Himes urges, the Court may consider the footage in adjudicating the Motion. Plaintiffs contest

5

this, arguing that the footage is not "central" to their Complaint. Resp. at 6. Regardless of whether the Court can consider the footage without converting the Motion into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), the Court can adjudicate the Motion without reference to the footage. Accordingly, without ruling on whether it can, the Court does not consider the footage here.

## II.    Qualified Immunity

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* The defense of qualified immunity requires that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1169 (10th Cir. 2020). The Supreme Court in *Pearson v. Callahan* emphasized that courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009); *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Here, the Court will begin by analyzing whether Plaintiff has cited to clearly established law.

### A.    Excessive Force

The second element of qualified immunity requires Plaintiff to show that his right against excessive force under the circumstances alleged is supported by clearly established law. *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). The Tenth Circuit has unambiguously emphasized

that it is a plaintiff's burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (finding that, although the plaintiff "might well have been able to satisfy us that Defendants' actions violated his clearly established rights," the plaintiff "through his counsel, [has simply] failed to carry the burden assigned to him by law."); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[The plaintiff], through his counsel, failed to carry the burden assigned him by law."). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283-84 (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must support the position. *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019), *cert. denied sub nom.*, *I.B. v. Woodard*, — U.S. —, 139 S. Ct. 2616 (2019); *Quinn*, 780 F.3d at 1005.

Historically, the Tenth Circuit has stated that in the Fourth Amendment context, "because excessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case, there will almost never be a previously published opinion involving exactly the same circumstances." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Casey*, 509 F.3d at 1284). Therefore, "[a court] cannot find qualified immunity whenever [it] find[s] a new fact pattern."

7

*Id.* (quoting *Casey*, 509 F.3d at 1284). In other words, the court concluded that the facts need not be precisely analogous for the purpose of determining whether relevant law was clearly established.

But, recent decisions by the Supreme Court have emphasized the importance of finding analogous factual circumstances when determining whether relevant law was clearly established. In *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1152 (2018), the Court stated "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." The Court ruled that "[u]se of excessive force is an area of the law 'in which the result depends very much on the *facts of each case* . . . .'" *Id.* at 1153 (emphasis added) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). The Court concluded that "police officers are entitled to qualified immunity unless existing precedent '*squarely governs*' the specific facts at issue." *Id.* (emphasis added) (quoting *Mullenix*, 577 U.S. at 13). Absent a showing of an analogous circumstance, the Supreme Court has stated that only in a "rare obvious case" will an officer's unlawful actions be sufficiently clear to overcome qualified immunity. *City of Escondido, v. Emmons*, — U.S. —, 139 S. Ct. 500, 504 (2019).

As an initial matter, Defendant Himes seeks dismissal of the claim regarding both his pointing of the firearm at Plaintiffs and the handcuffing of John. In response, Plaintiffs "do not claim that Defendant Himes used excessive force in pointing his service weapon at Plaintiffs. They only allege in their Complaint that Defendant Himes violated the Fourth Amendment . . . 'by wrenching [John's] arms behind his back to handcuff him.'" Resp. at 2 n.1. However, the Complaint does allege that "Defendants . . . violated Plaintiffs' clearly established right to be free

from excessive force by immediately pointing their guns at them." Compl. at ¶ 84. Thus, Defendant Himes "accepts Plaintiffs' concession, but requests that the Court dismiss the 'pointing gun' claim, with prejudice.'"[1] Reply at 2. Based on the allegations in the Complaint, the Court construes it as stating a claim under the Fourth Amendment regarding the alleged pointing of Defendant Himes' gun. Further, the Court construes Plaintiffs' representation as a voluntary dismissal of the claim under Fed. R. Civ. P. 41(a). The presumption under that Rule is that the claim or action is dismissed without prejudice. Defendant Himes has provided (and the Court finds no) authority to disturb that presumption here. Accordingly, Plaintiffs' Fourth Amendment claim based on Defendant Himes pointing a gun is dismissed without prejudice.

Concerning the handcuffing, Plaintiffs cite to four cases demonstrating clearly established law: *Fisher v. City of Las Cruces*, 584 F.3d 888, 901 (10th Cir. 2009), *Walton v. City of Southfield*, 995 F.2d 1331, 1333–34 (6th Cir. 1993), *superseded by statute on other grounds as recognized in Rudolph v. Babinec*, 939 F.3d 742 (6th Cir. 2019), *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008), and *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 754–59 (10th Cir. 2013). From the outset, the Court notes that *Walton* is a Sixth Circuit case; for a law to be clearly established, a Supreme Court or Tenth Circuit decision must be on point. *Woodard*, 912 F.3d at 1289. Likewise, Plaintiffs do not explain how (or if) a single case from another circuit can constitute established weight of authority from other courts. *Id.* Therefore, the Court considers only the Tenth Circuit cases cited by Plaintiffs. As stated below, the Court finds that none of those cases demonstrates Defendant Himes violated clearly established law.

---

[1] Defendant Himes provides no authority for dismissing the claim with prejudice, considering Plaintiffs' representation that they bring no such claim.

As Plaintiffs relied most heavily on *Fisher* in their briefs and at oral argument, the Court begins with it. The Tenth Circuit in *Fisher* recognized the general proposition "that a triable claim of excessive force exists where a jury could reasonably conclude that the officer handled a cooperating arrestee in a manner that the officer knew posed a serious risk of exacerbating the arrestee's injuries, which were themselves known to the officer." 584 F.3d at 901. In that case, a man accidently shot himself in the stomach and bicep. *Id.* at 891–92. His wife called the police, who arrived on scene and visibly saw the man's gunshot wounds. The officers attempted to place the man in handcuffs by having him lay on his wounded stomach. When the man refused, complaining of his injuries, an officer proceeded anyway to handcuff the man behind his back while placing "her knee into [his] back in order to leverage his arms behind his body." *Id*. at 892. The man protested this method of handcuffing, alleging "excruciating pain" from the knee in his back placing pressure on his stomach wound and the bringing of his arms behind his back causing him to feel "like [his] bicep was tearing." *Id.*

*Fisher* is materially distinguishable on two grounds. First, the level of knowledge by the officers in *Fisher* is different than in Plaintiffs' case. There, the officers witnessed an individual with "fresh wounds clearly visible[,]" of a grave and emergency nature. *Id.* at 892. One officer recognized the seriousness of the situation and the need for immediate assistance as the officer applied pressure to the open wound to "staunch the bleeding." *Id.* The plaintiff also "pleaded with the officers to avoid exacerbating the injuries." *Id.* at 899. In this case, Plaintiffs told Defendant Himes that John had "severe arthritis." Compl. at ¶ 62. Being told about a preexisting, degenerative condition and actually seeing bleeding, bullet-hole wounds does not connote the same level of knowledge. In *Fisher*, the officers could objectively tell (and thus objectively know) the

10

extent of the plaintiff's injuries. Here, Defendant Himes only "knew" through Plaintiffs' representations. The Court finds that distinction makes the cases materially different.

Second, Plaintiffs fail to allege an actual injury. "An excessive force claim that includes a challenge to the '[m]anner or course of handcuffing' requires the plaintiff to show both that 'the force used was more than reasonably necessary' and 'some non-de minimis actual injury.'" *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (quoting *Fisher*, 584 F.3d at 897–98). The Tenth Circuit is "consistent that in handcuffing cases, a plaintiff must establish some non-de minmis actual injury." *Fisher*, 584 F.3d at 898. In *Fisher*, the Tenth Circuit found an actual injury when considering, *inter alia*, that the gunshot wounds were obvious, the officers tried to staunch the wounds, "[t]he bicep wound had swollen to the size of a grapefruit[,]" the plaintiff "pleaded with the officers to avoid exacerbating the injuries[,]" the officer placed a knee in the plaintiff's back, and the plaintiff alleged that the "officers' actions . . . caused [him] to endure excruciating pain[,]" as if his "bicep was tearing." *Id.* at 899–900. In this case, Plaintiffs allege only that they told Defendant Himes about John's "severe arthritis," and John "screamed out" in "immense" pain as Defendant Himes "wrenched" his arm. Compl. at ¶ 62. Plaintiffs do not allege that John was independently injured by Defendant Himes' action or that John's arthritis was exacerbated in any way.[2]

A review of Tenth Circuit case law reveals that the Tenth Circuit has not held that pain alone can satisfy the actual injury requirement. *See Mglej v. Gardner*, 974 F.3d 1151, 1170 (10th Cir. 2020) (finding an actual, non-de minimis injury in case of "lasting physical injury . . . and [] extreme prolonged pain"); *Ali v. Duboise*, 763 F. App'x 645, 651 (10th Cir. 2019) (finding that

---

[2] The Court questions whether arthritis (a degenerative condition) can constitute an "injury" that can be exacerbated for purposes of the Fourth Amendment.

"excruciating pain" caused by two instances of deliberately and unnecessarily manipulating the plaintiff's arms and shoulders was sufficient to state a claim); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (determining that evidence of "red marks that were visible for days" was not sufficient to establish an actual injury); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (finding that "superficial abrasions" did not constitute an actual injury); *Donahue*, 948 F.3d at 1197 (holding no actual injury when the plaintiff sustained bruising but "no evidence of permanent injury"). In fact, the *Fisher* court implied that pain alone would not constitute an actual injury. *Fisher*, 584 F.3d at 900 ("This case does not involve only a self-serving affidavit asserting pain alone, without corroborating facts.").

Plaintiffs other two cited cases also do not convince the Court of an actual injury in this case. In *Vondrak*, officers stopped the plaintiff at a sobriety checkpoint. 535 F.3d at 1200–01. The plaintiff admitted to drinking a portion of a beer earlier in the day, so officers asked him to pull over and performed a field sobriety test. *Id.* at 1201. The plaintiff failed the sobriety tests, and officers placed him under arrest. *Id.* at 1201–02. Pursuant to department policy, an officer "double-locked" the plaintiff's handcuffs. *Id.* at 1202. The parties disputed whether the plaintiff complained about the tightness of the handcuffs. *Id.* However, there is no dispute that when he was taken back to the police station, the plaintiff complained about the handcuffs causing him pain. *Id.* When the plaintiff was eventually released, he went to the emergency room where a doctor diagnosed him with "neurapraxia in both wrists." *Id.* at 1202–03.

Finally, in *Roosevelt-Hennix v. Prickett*, an officer pulled over a driver for speeding. 717 F.3d at 754–55. When the officer walked to the driver's side of the vehicle, the officer detected the odor of alcohol. *Id.* at 755. When asked if she had consumed any alcohol, the driver admitted to having two or three drinks. *Id.* The officer then conducted a field sobriety test on the driver.

*Id.* The officer handcuffed the driver and placed her in the back of his patrol car. *Id.* Once in the patrol car, the driver began to panic, because she was claustrophobic. *Id.* After refusing to calm down, the officer attempted to place a "hobble" on her legs. *Id.* at 755–56. The driver claimed that she told the officer that she could not move her legs due to a medical condition. *Id.* at 757. While the parties' version of events differed, no party disputed that the officer used a taser on the driver's leg. *Id.* at 756–57. Following the incident, the driver was taken to the hospital, where the next day she underwent surgery for "paralysis in her lower extremities." *Id*. at 757.

Plaintiffs' cited cases are materially, factually dissimilar to the events that occurred here. In *Vondrak*, the plaintiff was diagnosed with nerve damage from handcuffs, and the plaintiff in *Roosevelt-Hennix* needed surgery from the use of a taser. Both of those cases involved an actual injury. In *Fisher*, the court found an actual injury in case of "excruciating pain" only when viewed in light of "corroborating facts." 584 F.3d at 900. In this case, Defendant Himes is alleged to have "wrenched" John's arms behind his back, after Plaintiffs attempted to flee the scene. Compl. at ¶ 62. None of the cited cases concern plaintiffs trying to escape police nor "wrenching" arms when applying handcuffs. Moreover, Plaintiffs allege John screamed in pain, but do not even allege an independent injury from the handcuffing or even an exacerbation of any preexisting condition. *Fisher*, 584 F.3d at 901. Because of these differences, the Court finds that Plaintiffs have not provided a case that "squarely governs" the specific facts of their case. *Kisela*, 138 S. Ct. at 1153.

The Court is mindful that in the Fourth Amendment context, there will likely never be two cases factually identical. *Estate of Booker*, 745 F.3d at 427. Yet, the Supreme Court has emphasized that the clearly established law may not be defined at "a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The Supreme Court has instructed lower courts to find factual "[s]pecificity . . . in the Fourth Amendment context." *Id.* Although Plaintiffs

13

do an admirable job in attempting to reference clearly established law, they are essentially left solely with the general proposition stated in *Fisher*, and the Court cannot accept that as sufficient for finding clearly established law. It is Plaintiffs' burden to cite to this Court cases establishing the specific, clearly established law. *Thomas*, 607 F.3d at 669. Based on the cited cases, the Court finds Plaintiffs have not met their burden. Accordingly, the Court finds qualified immunity proper for lack of clearly established law.[3]

### III.   Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). Although Plaintiffs do not make a request for leave to amend in their briefs, they did so at oral argument. "Trial courts are equipped with means . . . to 'insist that the plaintiff put forward specific, nonconclusory factual allegations,' . . . to assist the court in determining whether qualified immunity ought to be imposed at this earliest possible stage or whether the complaint is sufficiently plausible." *Robbins*, 519 F.3d at 1249 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998)). Specifically, the Court "may insist that the plaintiff put forward specific, nonconclusory allegations that establish . . . cognizable injury in order to survive a prediscovery motion for dismissal . . . ." *Cawford-El*, 523 U.S. at 598. The Court recognizes that Plaintiffs have not had an opportunity to amend their Complaint. Accordingly, to the extent Plaintiffs (and their counsel) believe there is a good faith basis to amend the factual averments in the Complaint, to make a *specific*, *nonconclusory* allegation of an *actual injury*, the Court finds that Plaintiffs

---

[3] As such, the Court does not address the first prong of the qualified immunity analysis.

should be afforded the opportunity to do so. Therefore, while the Court grants Defendant Himes' Motion, it does so without prejudice.

## IV.     Discovery

In further consideration of whether a stay of discovery is appropriate here, the Court relies on *Ashcroft v. Iqbal*, 556 U.S. 662, 684–86 (2009). In that case, the Supreme Court addressed the issue of determining, on a motion to dismiss, some defendants' qualified immunity defense while, at the same time, permitting discovery to proceed against nonmoving defendants. The Court rejected using "careful-case-management" under which the district court would allow discovery for the moving defendants "to be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for [moving defendants] and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position." *Id.* at 685. This analysis does not apply to motions for summary judgment in which the plaintiff may need some pinpoint discovery to establish a material disputed issue of fact. It may also not apply as strictly when the list of defendants is long, or when there is a mix of institutional and individual defendants. Here, however, with a single incident involving only two defendant police officers from the same department, the Court believes it would be unmanageable for it to referee which discovery efforts are permissible and which are not. Therefore, pending Plaintiffs' decision on whether they can, in good faith, amend their Complaint to state a cognizable constitutional deprivation alleging something more than significant, transitory pain, or further, whether they stand on their pleading and move forward with their claims against Defendant Lamb, discovery is stayed.

## **CONCLUSION**

For the reasons stated above, Defendant Himes' Motion to Dismiss [filed August 17, 2020; ECF 19] is **granted** and the claims against Defendant Himes are dismissed without prejudice. Additionally, discovery is stayed pending Plaintiffs' decision on whether to amend their Complaint.

Entered this 4th day of November, 2020, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge