IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01603-MEH

NICHOLAS MOSES, and
JOHN MOSES,

      Plaintiffs,

v.

POLICE CORPORAL JOSEPH LAMB, in his individual capacity, and
POLICE OFFICER BEN HIMES, in his individual capacity,

      Defendants.

_____

## ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Following the filing of the Amended Complaint by Plaintiffs Nicholas Moses and John Moses (together, "Plaintiffs"), Defendant Ben Himes ("Himes") filed the pending motion to dismiss ("Motion"). ECF 40. As they did in their original Complaint, Plaintiffs assert claims against Defendants Joseph Lamb ("Lamb") and Himes pursuant to 42 U.S.C. § 1983 for alleged excessive force in violation of the Fourth Amendment. Am. Compl. at ¶¶ 82–139. Himes' Motion seeks dismissal of the sole claim against him and asserts qualified immunity. ECF 40. The Motion is fully briefed, and the Court finds that oral argument would not materially assist it. As set forth below, this Court **grants** Himes' Motion.

## BACKGROUND

      As an initial remark, the Court notes that the facts alleged in the original Complaint and the Amended Complaint are substantially the same. The Court reproduces the allegations from its

prior order solely for the sake of coherency.  With that in mind, the Court views the following facts as material to its analysis.

On June 7, 2018, Plaintiffs allege that they were in a truck parked in a public parking lot located near Mudrock's Tap and Tavern at 585 E. South Boulder Road, Louisville, Colorado 80027.  Compl. at ¶ 14.  A Mudrock's employee called the Louisville Police Department to report that Plaintiffs were using narcotic drugs.  *Id.* at ¶ 15.  Lamb responded to this call; Himes arrived shortly after Lamb.  *Id.* at ¶ 17.  When Lamb arrived, he pulled his vehicle in front of Plaintiffs' truck.  *Id.* at ¶ 18.  Lamb unholstered his gun, pointed it at Nicholas Moses ("Nicholas"), and ordered him to get out of the truck.  *Id.* at ¶ 19.  After arriving, Himes parked his patrol car perpendicular to Plaintiffs' truck, exited his vehicle, pulled out his gun, and pointed it at Plaintiffs.  *Id.* at ¶ 24.

Responding to Lamb's commands, Nicholas exited his vehicle and walked backwards toward Lamb with his hands raised.  *Id.* at ¶ 25.  Lamb told Nicholas he would be taken into custody, at which point Nicholas ran back into his truck and attempted to drive away.  *Id.* Continuing to point their guns, Defendants followed Nicholas and tried to pull him from the truck.  *Id.* at ¶ 26.  At this point, Defendants could see John Moses ("John") in the vehicle with Plaintiffs' puppy, Dozer.  *Id.*  Lamb then held his gun to Nicholas' neck.  *Id.* at ¶ 27.  In reaction, Himes "pushed" Lamb away from the truck and pulled out his taser.  *Id.* at ¶ 28.  Himes deployed the taser but did not directly strike Nicholas.  *Id.* at ¶ 29.  Himes then moved approximately fifteen feet away from the truck.  *Id.* at ¶ 30.

Nicholas attempted to flee by turning the wheels away from the officers and putting the truck in drive.  *Id.* at ¶ 33.  In doing so, Nicholas caused his truck to hit Lamb's vehicle, remaining pinned against it for thirty seconds.  *Id.* at ¶ 37.  Unsuccessful in his escape driving forward,

2

Nicholas put his truck in reverse and drove straight backward into a tree. *Id.* at ¶ 39. Then, again turning the wheels of the truck away from Defendants, Nicholas put the truck in drive and drove forward. *Id.* at ¶ 39. From Nicholas turning the wheels of the truck to driving forward, eight seconds elapsed. *Id.* at ¶ 40. As Nicholas drove forward, the truck began to pass Defendants. *Id.* at ¶ 41. Lamb fired his gun at the truck, striking Nicholas in the arm and killing the puppy, Dozer. *Id.* at ¶ 53.

After being shot, Nicholas stopped the truck about fifteen feet away from when he had put it in drive. *Id.* at ¶ 56. Lamb ordered Nicholas to exit the truck, but he "was in shock and crying with pain from the bullet wound." *Id.* at ¶ 57. Lamb tried to open the driver's door, but three bullets hit the door handle, making it inoperable from the outside. *Id.* Meanwhile, Himes instructed John to exit the truck and walk backward toward him with his hands up. *Id.* at ¶ 58. John replied that he could not get out of the truck, since he was holding Nicholas' arm to stop the bleeding. *Id.* At some point, John did exit the truck. *Id.* at ¶ 59. John cooperated with Defendants' commands, including getting down on his knees. *Id.* at ¶ 62. Before Himes attempted to place John in handcuffs, Nick told Himes to be careful when handcuffing John because "he was injured and handcuffing would exacerbate his injuries." *Id.* at ¶ 62. John also told Himes that "he could not place his hands on his head and interlock his fingers." *Id.* When placing the handcuffs, Himes "wrenched" John's arms behind his back. *Id.* at ¶ 63. This action caused him to scream out in pain. *Id.* "Eventually, after multiple efforts by Himes to force [John's] arms behind is back, and blood-curdling screams in response from [John], Himes asked what was wrong with [his] arms." *Id.* John responded that he had "severe arthritis in his shoulders[,]" and that "if he continued to try to force his arms behind his back . . . he would dislocate [John's] shoulders." *Id.*

Despite this warning, Himes continued to attempt to handcuff John. *Id.* He wrenched John's arms "approximately ten times" before he grabbed a second pair of handcuffs. *Id.* at ¶ 64. John continued to experience pain as Himes tried to handcuff him using both pairs of handcuffs. *Id.* Himes eventually succeeded in handcuffing John. *Id.* While in jail the next week, John's "shoulder were extremely sore." *Id.* at ¶ 67. He alleges that the handcuffing "had exacerbated the arthritis in his shoulders and left him with an injury that lasted at least one week." *Id.* Himes' actions also caused injury to John's back, forcing him "to use a wheelchair during part of his stay at the jail." *Id.*

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not

4

nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

As mentioned above, Plaintiffs' Amended Complaint asserts one claim against Himes for violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983. Himes argues for dismissal of the claim, asserting qualified immunity. Mot. at 8. In support, Himes attached body worn camera ("BWC") footage. ECF 21 (conventionally submitted material). Plaintiffs contend that the Court

may not consider such evidence at the motion to dismiss stage.  Resp. at 5–6.  The Court will first address the BWC footage before proceeding to the merits of the Motion.

## I.      BWC Footage

"Generally, the sufficiency of a complaint must rest on its contents alone."  *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010).  There are limited exceptions to this general rule by which a court may consider materials beyond the four corners of the complaint.  *Id.*  These three exceptions are:  "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id.* (internal citations and quotations omitted).  The parties again dispute whether the Court may consider the BWC footage.  As it did previously, regardless of whether the Court can consider the footage without converting the Motion into a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), the Court can adjudicate the Motion without reference to the footage.  Accordingly, without ruling on whether it can, the Court does not consider the footage here.

## II.      Qualified Immunity

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*  The defense of qualified immunity requires that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."  *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1169

(10th Cir. 2020). The Supreme Court in *Pearson v. Callahan* emphasized that courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009); *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Here, the Court will begin by analyzing whether Plaintiffs have cited to clearly established law.

      A.    Clearly Established

The second element of qualified immunity requires Plaintiffs to show that their right against excessive force under the circumstances alleged is supported by clearly established law. *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). The Tenth Circuit has unambiguously emphasized that it is a plaintiff's burden to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) ("Plaintiffs failed to carry their burden of showing that [the defendants] violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity."); *Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (finding that, although the plaintiff "might well have been able to satisfy us that Defendants' actions violated his clearly established rights," the plaintiff "through his counsel, [has simply] failed to carry the burden assigned to him by law."); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) ("[The plaintiff], through his counsel, failed to carry the burden assigned him by law."). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey*, 509 F.3d at 1283–84 (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). For the law to be clearly established, there

must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must support the position.  *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019), *cert. denied sub nom.*, *I.B. v. Woodard*, — U.S. —, 139 S. Ct. 2616 (2019); *Quinn*, 780 F.3d at 1005.

Historically, the Tenth Circuit has stated that in the Fourth Amendment context, "because excessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case, there will almost never be a previously published opinion involving exactly the same circumstances." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Casey*, 509 F.3d at 1284).  Therefore, "[a court] cannot find qualified immunity whenever [it] find[s] a new fact pattern." *Id.* (quoting *Casey*, 509 F.3d at 1284).  In other words, the court concluded that the facts need not be precisely analogous for the purpose of determining whether relevant law was clearly established.

But, recent decisions by the Supreme Court have emphasized the importance of finding analogous factual circumstances when determining whether relevant law was clearly established. In *Kisela v. Hughes*, — U.S. —, 138 S. Ct. 1148, 1152 (2018), the Court stated "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."  The Court ruled that "[u]se of excessive force is an area of the law 'in which the result depends very much on the *facts of each case* . . . .'"  *Id.* at 1153 (emphasis added) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).  The Court concluded that "police officers are entitled to qualified immunity unless existing precedent '*squarely governs*' the specific facts at issue."  *Id.* (emphasis added)

(quoting *Mullenix*, 577 U.S. at 13). Absent a showing of an analogous circumstance, the Supreme Court has stated that only in a "rare obvious case" will an officer's unlawful actions be sufficiently clear to overcome qualified immunity. *City of Escondido, v. Emmons*, — U.S. —, 139 S. Ct. 500, 504 (2019).

Plaintiffs cite to the same four cases as they did in their briefing on the previous motion to dismiss to demonstrate clearly established law: *Fisher v. City of Las Cruces*, 584 F.3d 888, 901 (10th Cir. 2009), *Walton v. City of Southfield*, 995 F.2d 1331, 1333–34 (6th Cir. 1993), *superseded by statute on other grounds as recognized in Rudolph v. Babinec*, 939 F.3d 742 (6th Cir. 2019), *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1209 (10th Cir. 2008), and *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 754–59 (10th Cir. 2013). The Court incorporates its prior analysis on these cases in finding that none of them demonstrate clearly established law. ECF 31 at 9–14.

In addition, Plaintiffs cites five additional cases, two of which are *Ali v. Duboise*, 763 F. App'x 645, 651 (10th Cir. 2019) (finding that a defendant "twice deliberately and unnecessarily manipulated [the plaintiff's] arms or shoulder . . . in a way that caused excruciating pain" sufficiently pleaded "more than a de minimis use of physical force") and *Plascencia v. City of St. George*, 705 F. Supp. 2d 1276, 1286–87 (D. Utah 2010) (finding that it is the "patently unreasonable conduct" and the "unwarranted nature of the force" that matters as opposed to any sensitive due to an arthritic condition"). As for *Ali*, an unpublished opinion, even from the Tenth Circuit, does not demonstrate clearly established law. *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) ("An unpublished opinion . . . provides little support for the notion that the law is clearly established on this point,"). Regarding *Plascencia*, this is a District Court case and also cannot clearly establish the law. *Woodard*, 912 F.3d at 1289.

Plaintiff's three other cases are published Tenth Circuit opinions: *Morris v. Noe*, 672 F.3d 1185, 1190, 1195–96 (10th Cir. 2012); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1309–10, 1315 (10th Cir. 2002); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282–83 (10th Cir. 2007). Plaintiffs cite these cases for the proposition that an officer's use of force is unconstitutional when used against individuals "who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance." *McCoy v. Meyers*, 887 F.3d 1034, 1052 n.21 (10th Cir. 2018).

However, the Court finds all three cases materially different from the one here. In *Morris*, the officer threw the suspect to the ground and then handcuffed him. 672 F.3d at 1190. In *Olsen*, there were allegations that the plaintiff resisted arrest by tensing up his muscles. 312 F.3d at 1310. Finally, in *Casey*, officers used a taser to subdue the plaintiff and "repeatedly banged his face into the concrete." 509 F.3d at 1280. None of these cases concern the alleged use of excessive force in only applying handcuffs to a compliant individual with a preexisting condition like arthritis after that person attempted to flee. Because of these differences, the Court finds that Plaintiffs have not provided a case that "squarely governs" the specific facts of their case. *Kisela*, 138 S. Ct. at 1153.[1]

The Court is mindful that in the Fourth Amendment context, there will likely never be two cases factually identical. *Estate of Booker*, 745 F.3d at 427. Yet, the Supreme Court has

---

[1] The Tenth Circuit has held that it "may conclude a constitutional right was clearly established, even in the absence of similar prior cases, if the force is clearly unjustified based on the *Graham* factors." *Morris*, 672 F.3d at 1197–98. These three, non-exclusive factors are: (1) severity of the suspected crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade. *Fisher*, 584 F.3d at 894 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In *Morris*, the Court weighed these factors in favor of finding a clearly established right against forceful takedown when the suspect was merely a misdemeanant and posed no threat to others. *Morris*, 672 F.3d at 1198. Whatever similarities may exist between *Morris* and this case regarding the application of the *Graham* factors, the parties have not cited (and the Court did not find) a case in which the District Court applied the factors to find clearly established law when it otherwise did not exist. The Court declines to do so now.

emphasized that the clearly established law may not be defined at "a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The Supreme Court has instructed lower courts to find factual "[s]pecificity . . . in the Fourth Amendment context." *Id.* Like last time, Plaintiffs do an admirable job in attempting to reference clearly established law, but they are essentially left solely with the general proposition stated in *Fisher*, and the Court cannot accept that as sufficient for finding clearly established law. It is Plaintiffs' burden to cite to this Court cases establishing the specific, clearly established law. *Thomas*, 607 F.3d at 669. Based on the cited cases, the Court finds Plaintiffs have not met their burden. Accordingly, the Court finds qualified immunity proper for lack of clearly established law.

      B.    <u>Constitutional Violation</u>

Even if Plaintiffs had met their burden of demonstrating clearly established law, the Court finds that Plaintiffs fail to establish a constitutional violation. The crux of this Court's prior dismissal of Plaintiffs' claim concerned the lack an actual injury. "An excessive force claim that includes a challenge to the '[m]anner or course of handcuffing' requires the plaintiff to show both that 'the force used was more than reasonably necessary' and 'some non-de minimis actual injury.'" *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (quoting *Fisher*, 584 F.3d at 897–98). The Tenth Circuit is "consistent that in handcuffing cases, a plaintiff must establish some non-de minmis actual injury." *Fisher*, 584 F.3d at 898. A review of Tenth Circuit case law reveals that the Tenth Circuit has not held that pain alone can satisfy the actual injury requirement. *See Mglej v. Gardner*, 974 F.3d 1151, 1170 (10th Cir. 2020) (finding an actual, non-de minimis injury in case of "lasting physical injury . . . and [] extreme prolonged pain"); *Ali*, 763 F. App'x at 651 (finding that "excruciating pain" caused by two instances of deliberately and unnecessarily manipulating the plaintiff's arms and shoulders was sufficient to state a claim); *Cortez v.*

*McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (determining that evidence of "red marks that were visible for days" was not sufficient to establish an actual injury); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (finding that "superficial abrasions" did not constitute an actual injury); *Donahue*, 948 F.3d at 1197 (holding no actual injury when the plaintiff sustained bruising but "no evidence of permanent injury"). In fact, the *Fisher* court implied that pain alone would not constitute an actual injury. *Fisher*, 584 F.3d at 900 ("This case does not involve only a self-serving affidavit asserting pain alone, without corroborating facts.").

To remedy their prior deficiencies, Plaintiffs added new allegations. These include that Himes wrenched John's arms "approximately ten times" before grabbing a second pair of handcuffs, and that while in jail the next week, John alleges that the handcuffing "had exacerbated the arthritis in his shoulders and left him with an injury that lasted at least one week." Am. Compl. at ¶ 64. Plaintiffs also allege that Himes' actions caused injury to John's back, forcing him "to use a wheelchair during part of his stay at the jail." *Id.* However, the Court finds that these are bare and conclusory allegations. Plaintiffs allege some non-specific injury that lasted for a week and required John to use a wheelchair, but they do not specify what the injury is and how it is different from pain generally.

This is in contrast with the cases cited by Plaintiffs. For example, in *Vondrak*, the plaintiff was diagnosed with nerve damage from handcuffs, and the plaintiff in *Roosevelt-Hennix* needed surgery from the use of a taser. Both of those cases involved an actual, identifiable injury. Similarly, in *Morris*, after being tackled, the plaintiff was taken to the hospital for thirty days for treatment concerning novel hip injuries. 672 F.3d at 1190. Here, the Court is left wondering exactly what injury John suffered as a result of Himes' actions. Also, there is no way for the Court to determine if the injuries (whatever they might be) are new or simply related to John's preexisting

arthritis.[2]  Without that information, the Court cannot find that Plaintiffs have plausibly pleaded a constitutional violation.  *Iqbal*, 556 U.S. at 679.

## III.     Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'"  *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)).  Plaintiffs have not made a request for leave to amend in their briefing.  "Trial courts are equipped with means . . . to 'insist that the plaintiff put forward specific, nonconclusory factual allegations,' . . . to assist the court in determining whether qualified immunity ought to be imposed at this earliest possible stage or whether the complaint is sufficiently plausible."  *Robbins*, 519 F.3d at 1249 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998)).  Specifically, the Court "may insist that the plaintiff put forward specific, nonconclusory allegations that establish . . . cognizable injury in order to survive a prediscovery motion for dismissal . . . ."  *Cawford-El*, 523 U.S. at 598.  The Court already provided such an opportunity to Plaintiffs.  Crucially, the Court dismissed the original claim against Himes for lack of clearly established law.  The Court has done so again here.  Allowing amendment for a second time is likely futile.  Accordingly, the Court dismisses Plaintiffs' claim with prejudice.

## IV.     Discovery

The case is currently stayed.  Defendants moved for a stay of discovery to allow the Court to rule on Himes' Motion.  The Court has done so.  Therefore, the Court lifts the stay.  Plaintiffs

---

[2] As in the prior order, the Court questions whether arthritis (a degenerative condition) can constitute an "injury" that can be exacerbated for purposes of the Fourth Amendment.

and Lamb are directed to confer regarding amendment of the Scheduling Order and submit a joint proposed schedule to hegarty_chambers@cod.uscourts.gov on or before January 29, 2021.

## <u>CONCLUSION</u>

For the reasons stated above, Himes' Motion [<u>filed December 18, 2020; ECF 40</u>] is **granted,** and the claim against Himes is dismissed with prejudice.  Himes is dismissed from this case, and the Court directs the Clerk of the Court to adjust the case caption accordingly. Additionally, the stay of discovery is lifted.

Entered this 22nd day of January, 2021, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

14